**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RICHARD A. KRZYWICKI,<br><br>                              Plaintiff,<br><br>      v.<br><br>CARLOS DEL TORO,<br>Secretary of the Navy,<br><br>                              Defendant. | Case No. 21-cv-1508 (JMC) |

## MEMORANDUM OPINION

Richard Krzywicki challenges two decisions by the Board for the Correction of Naval Records (BCNR), in which the BCNR rejected Mr. Krzywicki's request to remove information related to a domestic violence incident from his military personnel file.[1] Mr. Krzywicki argues that the BCNR's decisions were deficient under the Administrative Procedure Act (APA) because they were arbitrary and capricious and not based on substantial evidence. Mr. Krzywicki also argues that procedural deficiencies in the BCNR's adjudication of his application deprived him of his due process rights. The case is before the Court on cross-motions for summary judgment. The Court grants summary judgment for Defendant, denies it for Plaintiff, and dismisses the case.

## I.    BACKGROUND

The Court takes the following facts from the administrative record. In January 2016, Mrs. Krzywicki filed a police report stating that her husband, Captain Richard Krzywicki, was drinking

---

[1] Unless otherwise indicated, the formatting of quoted materials has been modified throughout this opinion, for example, by omitting internal quotation marks and citations, and by incorporating emphases, changes to capitalization, and other bracketed alterations therein. All pincites to documents filed on the docket are to the automatically generated ECF Page ID number that appears at the top of each page.

and acting violently towards her. ECF 25-1 at 103, 112. In her report, Mrs. Krzywicki also claimed that Mr. Krzywicki had assaulted her on an earlier date, November 8, 2015, by grabbing her face and strangling her by the neck. *Id.* Mrs. Krzywicki provided photographs to the police showing bruises on a woman's lip and neck, which she told police were caused by that incident. *Id.* at 104–106. Based on the subsequent investigation, the Norfolk Commonwealth Attorney's Office decided to prosecute Mr. Krzywicki for domestic assault. *Id.* at 108.

Three days before the trial, Mrs. Krzywicki approached the prosecuting attorney and asked the attorney to drop the charges, expressing concern about the impact of the case on the couple's finances. *Id.* According to the prosecutor, Mrs. Krzywicki downplayed the assault, stating that she had brought it on herself and that Mr. Krzywicki was just "shutting [her] mouth," not strangling her. *Id.* At trial, Mrs. Krzywicki testified that her husband did not assault her on November 8, 2015, and that the photographs depicting injuries were from an incident that happened on June 18, 2015. *Id.* Later, at a continued trial, she testified that she could not remember the incident at all and did not know when the photographs were taken. *Id.* at 109. Absent Mrs. Krzywicki's testimony, the court found Mr. Krzywicki not guilty of the assault. *Id.* at 100, 109.

The not-guilty verdict did not put an end to Mr. Krzywicki's troubles, however. That is because, after the trial, the Marine Corps undertook its own investigation of the allegations. First, the Marine Corps Family Advocacy Program, Incident Determination Committee (IDC) investigated the allegations and found that they did not meet the criteria to substantiate spousal physical abuse. *Id.* at 123. Next, Mr. Krzywicki's command reviewed the evidence, determining that the allegations of misconduct were credible. One piece of evidence supporting that determination was an email from the Norfolk Assistant Commonwealth prosecutor (who tried Mr. Krzywicki) to a Navy lawyer, expressing her opinion that Mr. Krzywicki should have been

charged with a more serious crime, that Mrs. Krzywicki's refusal to cooperate at trial did not reflect the truth of the situation, and that Mrs. Krzywicki was "the portrait of a battered woman." *Id.* at 108. The prosecutor also reported that Mrs. Krzywicki never denied that Mr. Krzywicki assaulted her when she testified at trial—rather, she testified that he did not assault her in November, *id.*, and, later, that she could not remember what happened in June, *id*. at 109. In the end, Lt. Gen. John E. Wissler issued a Report of Misconduct (ROM) finding that Mr. Krzywicki had assaulted his wife on November 8, 2015, and attributing his acquittal to his wife's "lack of cooperation" at the trial. *Id.* at 113 ¶ 2.c. The ROM also provided that Mr. Krzywicki had, following his January 2017 arrest, entered and successfully completed an alcohol rehabilitation program.[2] *Id.* at 113 ¶ 3.

A copy of the ROM was shared with Mr. Krzywicki, who responded, contending that his wife's allegations of abuse were fabricated and accusing the Norfolk Assistant Commonwealth prosecutor of misconduct and intimidation during the trial. *Id.* at 118–121. In his response, Mr. Krzywicki also pointed to evidence that the metadata on the photographs his wife had provided to the police indicated that they had been taken in June 2015, not November of that year. *Id.* at 120. Lt. Gen. Wissler was unpersuaded by that evidence, reasoning that the metadata on digital photographs is easy to manipulate. *Id.* at 116. He also observed that, according to the prosecutor, Mrs. Krzywicki never denied that Mr. Krzywicki assaulted her. *Id.* Accordingly, he affirmed his finding that Mr. Krzywicki had abused his wife. *Id.* However, Lt. Gen. Wissler replaced the specific date—November 8, 2015—with a date range, concluding that the abuse had occurred

---

[2] According to the BCNR, Lt. Gen. Wissler was "required to mention [Mr. Krzywicki's] alcohol treatment once he determined that alcohol was a contributing factor" to the abuse. ECF 25-1 at 3 ¶ 3.k(2).

during the period between June 2015 and January 2016. *Id*. The ROM was subsequently placed into Mr. Krzywicki's personnel file.

In December 2017, Mr. Krzywicki filed an application with the Board for Correction of Naval Records (BCNR) requesting that the ROM, which contained both Lt. Gen. Wissler's finding that Mr. Krzywicki had abused his wife and information about his enrollment in an alcohol treatment program, be removed from his personnel file. *Id*. at 149. The BCNR, after receiving Mr. Krzywicki's application, requested an Advisory Opinion to recommend how Mr. Krzywicki's application should be resolved.[3] *Id*. at 160. The Advisory Opinion, submitted to the BCNR in April 2018, was written by Lt. Col. S.D. Schrock and concluded that Mr. Krzywicki's request should be denied. *Id.* It concluded that the ROM's findings were based on substantial evidence. *Id.* at 162. The Advisory Opinion considered that Mr. Krzywicki had been acquitted in a court of law but determined that the court's verdict had "little relevance, if any." *Id.* That is because the not-guilty verdict was based on a reasonable doubt standard, whereas the ROM's findings were based on a preponderance of the evidence. *Id.* The Advisory Opinion also considered the IDC's finding that the evidence did not establish spousal abuse, but discounted the significance of that finding because the IDC did not specify the date of the incident it was considering, failed to adequately specify the evidence on which it relied, and was not binding in any event. *Id.* at 162–163.

A copy of the Advisory Opinion was provided to Mr. Krzywicki, who submitted a written response. *Id.* at 164. Therein, Mr. Krzywicki made several arguments challenging the Advisory Opinion's reasoning and conclusions. *Id.* at 164–167. Mr. Krzywicki contended that his wife had fabricated the allegations in her police report and that she had downloaded the photographs of her

---

[3] The BCNR's regulations implicitly authorize the Board to request and consider such advisory opinions. 32 C.F.R. § 723.6(c). Nor does Mr. Krzywicki challenge the propriety of doing so.

supposed injuries from the internet. *Id.* at 166. He denied ever striking his wife, claiming instead

that it was she who had the history of physically abusing him. *Id.* at 165. In addition, Mr. Krzywicki

repeated his objection that the ROM was based in part on "private emails" from the prosecutor

who had lost his criminal case, and that the prosecutor was unreliable because she had pressured

his wife to testify even after she recanted her accusations. *Id.* at 164, 166. He also argued that he

was not intoxicated on the night of his arrest, and that the information about his voluntary treatment

for alcohol abuse should be removed from his personnel file. *Id.* at 167.

On September 27, 2018, the BCNR issued a decision letter adopting the reasoning of the

Advisory Opinion and denying Mr. Krzywicki's application for correction. *Id.* at 158. The letter

stated that the Board had considered the IDC's finding that the allegations against Mr. Krzywicki

did not meet the criteria to substantiate spousal physical abuse, as well as the not-guilty verdict in

court. *Id.* The letter further stated that the Board had considered Mr. Krzywicki's response to the

Advisory Opinion, including evidence that Mrs. Krzywicki had recanted her accusations, and

Mr. Krzywicki's argument that the ROM was based on an improper email exchange between the

Navy JAG and the Norfolk Assistant Commonwealth prosecuting attorney. *Id.*

Importantly, the BCNR's decision also included the following revelation:

> Your application was initially considered by a panel of the Board on 26 June
> 2018. Prior to approval and publication of the Board's decision, additional
> information that was not available to the earlier Board was identified.
> Therefore, your application was subsequently referred to a new panel for
> consideration. The new panel of the Board, sitting in executive session,
> considered your application on 7 August 2018.

*Id*. The decision letter contains no description of what that "additional information" was that led

the BCNR to reconstitute the panel. *See id.* The BCNR would later explain that it had determined

that the examiner who had presented the case to the first panel had omitted or modified information

about Mr. Krzywicki's case, such that the Board was not presented with an accurate description of

the case. *Id.* at 5. Although the first panel had voted unanimously to grant Mr. Krzywicki's application, *see id.* at 153 (signature block), the reconstituted panel—based on a revised presentation by the same examiner—voted unanimously to deny the application, *id.* at 154–157.

Mr. Krzywicki petitioned the BCNR for reconsideration. *Id.* at 49, 56. In support of his position, he provided two "new" pieces of evidence. First, he submitted the results of a polygraph examination in which he denied that he had put his hands around his wife's neck or inflicted any injury to her lip on November 8, 2015. *Id.* at 58. The petition for reconsideration also included declarations from both Mr. Krzywicki and his wife averring that he had not physically assaulted her on June 18, 2015, November 8, 2015, January 9, 2016, January 10, 2016, or any other date. *Id.* at 58–59. The declarations further stated that Mrs. Krzywicki fabricated her police report out of misplaced jealousy, and that she had downloaded the photographs she submitted with her original police report from the internet, falsely informing the police that they were of her. *Id.* at 59. In his petition, Mr. Krzywicki argued that Lt. Con. Schrock (who wrote the 2018 Advisory Opinion) had a conflict of interest, having had "substantial prior involvement" in the matter, as he had been involved in the decision to place the ROM in Mr. Krzywicki's file. *Id.* at 79–80. Finally, Mr. Krzywicki claimed that the decision by the BCNR to disband and reconstitute the panel that had initially heard the evidence against him was improper because there was not, as the decision letter had claimed, any new evidence for the second panel to consider. *Id.* at 77–79.

The BCNR again requested an Advisory Opinion, which was issued in July 2019. *Id.* at 43. The 2019 Advisory Opinion considered and rejected the new evidence presented by Mr. Krzywicki. First, it concluded that the polygraph results were not persuasive evidence because polygraph tests are not considered reliable and because, even assuming the polygraph was reliable, Mr. Krzywicki had only denied abusing his wife on November 8, 2015, not on any other date

within the range specified by Lt. Gen. Wissler. *Id.* at 46. Next, the 2019 Advisory Opinion concluded that the affidavits denying the abuse were not "new" evidence at all; Mrs. Krzywicki had denied the abuse before the BCNR's original decision, and the Board had considered that evidence in reaching its decision. *Id.* The 2019 Advisory Opinion also considered and rejected Mr. Krzywicki's contention that Lt. Col. Schrock, the author of the 2018 Advisory Opinion, had a conflict of interest because he had been involved in the decision to place the ROM in Mr. Krzywicki's file. *Id.* at 46–47. In conclusion, the 2019 Advisory Opinion found that the ROM was supported by substantial evidence and that there was therefore no error or injustice that would require the ROM to be removed from Mr. Krzywicki's personnel file. *Id.* at 47.

The BCNR issued its second ruling on March 28, 2020, denying Mr. Krzywicki's request for reconsideration of the Board's 2018 decision. *Id.* at 1, 6. It considered that the criminal verdict was under a different evidentiary standard, that the IDC's determination was not binding, that the polygraph test was unreliable and incomplete, and that the affidavits submitted by Mr. Krzywicki with his petition for reconsideration were not new evidence. *Id.* at 3, 4. The Board also rejected Mr. Krzywicki's argument that the 2018 Advisory Opinion was biased. *Id.* at 4. Finally, the BCNR found that the decision to disband and reconstitute the original panel was justified because the initial panel was not presented with the conclusions from the 2018 Advisory Opinion. *Id.* at 5.

Mr. Krzywicki then filed his Complaint in this case, claiming that the BCNR's decisions were arbitrary and capricious, not based on substantial evidence, and violated his due process rights. ECF 1. The case is before the Court on the Parties' cross-motions for summary judgment. ECF 16; ECF 19.

## II.    LEGAL STANDARD

The Court will grant a motion for summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating a motion for summary judgment, "[t]he evidence is to be viewed in the light most favorable to the nonmoving party," and "the court must draw all reasonable inferences" in that party's favor. *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011). "[W]hen a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). "The entire case on review is a question of law." *Id*. In other words, in an APA case, summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record." *Alston v. Lew*, 950 F. Supp. 2d 140, 143 (D.D.C. 2013).

"Under the [APA], a court may set aside an agency's final decision only if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Ams. for Safe Access v. DEA*, 706 F.3d 438, 449 (D.C. Cir. 2013) (citing 5 U.S.C. § 706(2)(A)). "[I]n judicial review of agency action, weighing the evidence is not the court's function. Rather, the question for the court is whether there is 'such relevant evidence as a reasonable mind might accept as adequate to support' the agency's finding." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. PBGC*, 707 F.3d 319, 325 (D.C. Cir. 2013) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). A court "will not disturb the decision of an agency that has examined the relevant data and articulated a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made." *Ams. for Safe Access*, 706 F.3d at 449. That explanation need not be comprehensive; an agency must provide only a "brief statement" to explain "why it chose to do what it did." *Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014). What is more, courts review the agency's explanation with

considerable deference. A court will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Id*. at 1351–52.

All of that said, that deference has its limits. A court "may not supply a reasoned basis for an agency action that the agency itself did not give in the record under review." *Pierce v. SEC*, 786 F.3d 1027, 1034 (D.C. Cir. 2015). And "an agency's failure to respond meaningfully to objections raised by a party renders its decision arbitrary and capricious." *PSEG Energy Res. & Trade LLC v. FERC*, 665 F.3d 203, 208 (D.C. Cir. 2011).

## III.    ANALYSIS

Mr. Krzywicki makes three arguments why the Court should set aside the BCNR's decisions in this case. First, he argues that the BCNR acted arbitrarily when it disbanded the first panel, which had voted to grant his application, and reconstituted it without informing him in real time or fully describing its reasons for doing so in the 2018 decision letter. Second, he argues that the BCNR's 2018 decision fails the substantial evidence standard, both because the evidence supporting its decision was not substantial, and because it failed to give proper weight to the evidence in Mr. Krzywicki's favor.[4] Finally, Mr. Krzywicki argues that he was deprived of a fair hearing in violation of his due process rights. The Court will first resolve a dispute about the proper standard of review in this case, then address Mr. Krzywicki's arguments in turn.

---

[4] Mr. Krzywicki does not seem to make an independent challenge to the validity of the Board's 2020 decision denying his motion for reconsideration. Rather, Mr. Krzywicki appears to argue that the 2020 decision "should never have happened because the BCNR's first decision granting full relief to Captain Krzywicki should not have been overturned." ECF 21 at 10 n.2; *see also id.* at 14 n.5 ("The September 2018 panel decision, not the March 2020 denial of reconsideration, is the proper decision to evaluate for purposes of determining whether sufficient reasoning was provided by the BCNR in accordance with law."). Because Mr. Krzywicki concedes that the validity of the 2020 decision turns on the validity of the 2018 decision, the Court will not separately analyze the 2020 decision.

### A. Standard of Review

As a preliminary matter, the Court must resolve a dispute as to the standard of review for the APA claims in this case. By statute, the Secretary of the Navy "may correct any military record of [his] department when [he] considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). This review is conducted through the BCNR. Considering the wide latitude granted to the Secretary by Congress, as well as courts' general reluctance to interfere in matters of military judgment, this Circuit has found that decisions by boards like the BCNR receive the benefit of an "unusually deferential application of the arbitrary or capricious standard." *Kreis v. Sec'y of Air Force (Kreis I)*, 866 F.2d 1508, 1514 (D.C. Cir. 1989). However, the Circuit has clarified that the "unusually deferential" standard does not apply to all cases in which a court is asked to review a BCNR decision. *Kreis v. Sec'y of Air Force (Kreis III)*, 406 F.3d 684, 686 (D.C. Cir. 2005). Rather, the court "differentiates between 'military judgment requiring military expertise,'" like a personnel decision, "which should be reviewed under the 'unusually deferential' standard, and 'review of the Board's application of a procedural regulation governing its case adjudication process,' which is reviewed under the traditional arbitrary and capricious APA standard." *Wilhelmus v. Geren*, 796 F. Supp. 2d 157, 162 (D.D.C. 2011) (quoting *Kreis III*, 406 F.3d at 686)).

Here, Defendant contends that the Court should evaluate all Plaintiff's APA claims under the "unusually deferential" standard. ECF 19 at 17–18. Plaintiff, on the other hand, contends that the Court should proceed under the traditional arbitrary and capricious standard. ECF 21 at 7–8. The Court partially agrees with both Parties. Mr. Krzywicki's challenge to the BCNR's decision to disband and reconstitute the panel mid-adjudication involves a "procedural regulation governing [the BCNR's] case adjudication process." *Kreis III*, 406 F.3d at 686. Per Circuit precedent, the Court will consider that procedural claim under the traditional arbitrary and capricious standard.

*See id.* The same is not true for Mr. Krzywicki's substantive claim—that the BCNR's decision itself was both arbitrary and capricious and unsupported by substantial evidence. As for that claim, the Court finds that the BCNR's decision not to remove the ROM from Mr. Krzywicki's file is precisely the type of "personnel" decision to which the Circuit has applied the unusually deferential standard of review. *See Roberts v. United States*, 741 F.3d 152, 158 (D.C. Cir. 2014); *see also Sissel v. Wormuth*, 77 F.4th 941, 947 (D.C. Cir. 2023) ("the cases in which we have emphasized the need for a heightened standard of review to safeguard military judgment have involved decisions concerning active personnel, such as performance reviews and promotion decisions"); *Bennett v. Wormuth*, No. 19-CV-0131, 2023 WL 2682112, at *10 (D.D.C. Mar. 29, 2023) (applying the "unusually deferential" standard on APA claim where a plaintiff challenged the Army Board for Correction of Military Records' decision to not remove a "reprimand" from his record).

### B. The BCNR's decision to disband and reconstitute the first panel was not arbitrary and capricious.

First, Mr. Krzywicki contends that the BCNR's decision to disband and reconstitute the first panel, after that panel had already voted to grant his application, was arbitrary and capricious. In Mr. Krzywicki's view, the BCNR's action was arbitrary and capricious both because the BCNR contradicted its own regulations, ECF 16-1 at 15–18, and because the BCNR did not sufficiently explain the reasons for its decision, *id.* at 18–21.

The Court turns first to Mr. Krzywicki's argument that the BCNR's actions violated the Board's regulations. Mr. Krzywicki emphasizes the following language in the Board's governing regulations: "The name and final vote of each Board member will be recorded. A majority vote of the members present on any matter before the Board will constitute the action of the Board and shall be so recorded." 32 C.F.R. § 723.6(a)(3). Mr. Krzywicki contends that, under that regulation,

the BCNR's decision was final when the first panel voted to grant his application. If that is true, in Mr. Krzywicki's view, then the Board's choice to summarily vacate and reverse its own, final decision had no basis in the regulations.

Defendant counters that the mere fact that the first panel voted to approve Mr. Krzywicki's application did not make its decision final. ECF 19 at 13. That is because the Board had not yet issued "written findings, conclusions[,] and recommendations," a step that is required by the same provision that Mr. Krzywicki cites. 32 C.F.R. § 723.6(a)(3)*.* Nor had the Board taken any final corrective action involving Mr. Krzywicki's case, as it was authorized (but not required) to do on behalf of the Secretary. *Id.* § 723.6(e)(1). In addition, Defendant points to another provision in the regulations, stating that "[w]henever, during the course of its review of an application, it appears to the Board's satisfaction that the facts have not been fully and fairly disclosed by the records or by the testimony and other evidence before it, the Board may require the applicant or military authorities to provide such further information as it may consider essential to a complete and impartial determination of the facts and issues." *Id.* § 723.6(a)(2). Defendant, citing to an investigation that was finalized about a year after the events in this case, represents that, during the process of generating the written findings following the first panel's meeting, the Board became aware that the case examiner who presented the case to that panel had not provided a "full and fair summary of the facts." ECF 19 at 42–44 (citing ECF 25-2 at 140–141). Specifically, the case examiner only included information about the contents of the 2018 Advisory Opinion at the bottom of the brief sheet he provided the panel, and presented the facts of the case in ways that were inconsistent with (and indeed contradicted) the conclusions drawn in the Advisory Opinion. *Id*. According to Defendant, because the first panel did not "have a full and fair summary of the facts," the Board's decision to convene a new panel was justified under the regulations. *Id.* at 44.

The Court agrees with Defendant. The record shows that the first panel voted to grant Mr. Krzywicki's application based on an incomplete, and potentially inaccurate, understanding of the evidence. ECF 25-2 at 140–141. The Board was still in the process of reviewing and finalizing the panel's decision when it arrived at that realization. *Id.* at 140. The regulations specifically contemplate that in such a situation—at any point during the review of an application—the Board may request additional information. 32 C.F.R. § 723.6(a)(2). The text and purpose of that provision are incompatible with Mr. Krzywicki's proposed interpretation of the regulations, which would require the Board to write up and finalize a vote even after discovering that the vote was based on a false understanding of the underlying facts. As for the fact that the second panel consisted of different people, Mr. Krzywicki points to nothing in the regulations that requires otherwise.

That leaves Mr. Krzywicki's second argument, which is that the BCNR's decision to reconstitute the panel was arbitrary and capricious because the Board did not sufficiently explain its reasons for doing so. ECF 16-1 at 18–21. "The requirement that agency action not be arbitrary or capricious includes a requirement that the agency adequately explain its result." *Pub. Citizen, Inc. v. FAA*, 988 F.2d 186, 197 (D.C. Cir. 1993). This requirement is not particularly demanding, however. *Id.* Nothing more than a "brief statement" is necessary, as long as the agency explains "why it chose to do what it did." *Tourus Records, Inc. v. DEA*, 259 F.3d 731, 737 (D.C. Cir. 2001). If the court can "reasonably . . . discern[ ]" the agency's path, it will uphold the agency's decision. *Pub. Citizen*, 988 F.2d at 197 (citing *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)).

Here, the BCNR provided such an explanation. Its September 2018 decision letter clearly provided that it had convened the second panel because "[p]rior to approval and publication of the Board's decision, additional information that was not available to the earlier [panel] was

identified." ECF 25-1 at 158. Perhaps the BCNR could have better described what that information was. Nonetheless, it provided a contemporaneous reason for its decision, and that is enough under the APA. *Xcel Energy Servs. Inc. v. FERC*, 41 F.4th 548, 557 (D.C. Cir. 2022) ("We will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned."); *see also CSL Plasma Inc. v. U.S. Customs & Border Prot.*, 628 F. Supp. 3d 243, 261 (D.D.C. 2022) ("[A] brief explanation is not arbitrary and capricious just because of its brevity."). Nor, as Mr. Krzywicki contends, is the Court barred from considering evidence from the subsequent investigation of the examiner, which concluded that the examiner's initial presentation "included inaccurate and false information, favorable to the petitioner instead of a balanced presentation." ECF 25-2 at 140. That is not a post-hoc rationalization. On the contrary, the outcome of the subsequent investigation substantiates the reasons provided in the 2018 decision letter, and therefore weighs against any argument that the 2018 letter was arbitrary and capricious. Moreover, the briefing sheet confirms that the basis of those accusations against the examiner would have been known to the Board at the time of its decision. *See* ECF 25-1 at 151–153.

For all those reasons, the Court finds that the BCNR's decision to disband and reconstitute the panel to adjudicate Mr. Krzywicki's application was not arbitrary and capricious.

### C. The BCNR's September 2018 decision to deny Mr. Krzywicki's application was not arbitrary and capricious. Also, the decision was based on substantial evidence.

Mr. Krzywicki also argues that—even assuming the BCNR's decision to set aside the first panel's vote was not improper—the BCNR's September 2018 decision itself was arbitrary and capricious and not based on substantial evidence. In Mr. Krzywicki's view, the decision was arbitrary and capricious because the Board did not explain why it came to the opposite conclusion as the initial panel, though it reviewed the same evidence. ECF 16-1 at 19–20. Mr. Krzywicki also argues that the 2018 decision was not based on substantial evidence because the Board improperly

gave too much weight to uncorroborated evidence and ignored evidence that he submitted in rebuttal. *Id.* at 28, 30–31. The Court considers those arguments in turn.

First, the Court rejects the premise of Mr. Krzywicki's argument that the 2018 decision letter was arbitrary and capricious because the second panel reached the opposite conclusion from its predecessor. Mr. Krzywicki contends that he was owed an explanation as to why the second panel arrived at a different outcome based on the same evidence. But the BCNR's letter explicitly stated that the second panel was formed to review information that the first did not. ECF 25-1 at 158. Moreover, a comparison of the briefing sheets presented to both panels confirms that to be the case. For one thing, the first briefing sheet only references the Advisory Opinion at the bottom of the page, *id.* at 152, whereas the second includes specific cites to passages from the Advisory Opinion that recommended the rejection of Mr. Krzywicki's application, *id.* at 155. The second briefing sheet also characterized the evidence in different ways from the first. *Compare*, *e.g., id.* at 152 ("Defense proves that photos are from 18 June 2015 not 8 Nov 2015.") *with id.* at 155 ("Spouse testified that the pictures were from an incident that occurred on a different date from the initial accusation."). All of that is more than enough—under any standard, but particularly under the unusually deferential standard applicable here, *see supra* Part III.A—for the Court to discern the path of the Board's reasoning in reaching a different conclusion from the initial vote.

The Court next turns to Mr. Krzywicki's argument that the BCNR's decision should be set aside because it was not based on substantial evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is well-established that, in determining whether there is substantial evidence to support a decision, the Court may neither reweigh the evidence nor second-guess the agency's judgment concerning its credibility. *Thompson Med. Co. v. FTC*, 791

F.2d 189, 196 (D.C. Cir. 1986). If there is substantial evidence supporting the agency's conclusion, the standard is met, even if there is also substantial evidence supporting the opposite finding. *Burns v. Dir., Off. of Workers' Comp. Programs*, 41 F.3d 1555, 1564 n.13 (D.C. Cir. 1994). The court is required to scrutinize the entire record to ensure the agency has analyzed the evidence and "sufficiently explained the weight [it] has given to obviously probative exhibits." *Simms v. Sullivan*, 877 F.2d 1047, 1050 (D.C. Cir. 1989). Although courts have found that there is no "rigid requirement" that an agency "specifically refer to every piece of evidence in [its] decision," *Goodman v. Colvin*, 233 F. Supp. 3d 88, 109 (D.D.C. 2017), the agency's decision must provide at least "some indication not only of what evidence was credited, but also whether other evidence was rejected rather than simply ignored," *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004).

Here, the BCNR's decision letter adopts the recommendations of the Advisory Opinion that it requested in advance of its decision, ECF 25-1 at 159, and so the Court considers those documents together. *See Roberts v. United States,* 741 F.3d at 159 ("[W]e have looked before to the reasoning of an advisory opinion in upholding a decision of [the BCNR]."). Like the decision letter, the Advisory Opinion concluded that the ROM was based on substantial evidence—Mrs. Krzywicki's written police report, the photographs she provided to the police, and the Norfolk Commonwealth prosecutor's emails describing the events leading to Mr. Krzywicki's not-guilty verdict. *Id.* at 162. The Advisory Opinion considered Mr. Krzywicki's acquittal in a court of law, as well as the conclusion of the IDC that the allegations against Mr. Krzywicki did not meet the criteria for spousal abuse, but discounted those findings because they were not made under the same standard and facts as were Lt. Gen. Wissler's conclusions in the ROM. *Id.* at 162–63. The BCNR's decision letter also stated that the panel had considered Mr. Krzywicki's assertion that his wife made her abuse allegations in a jealous rage, as well Mr. Krzywicki's contention that

the "private e-mail exchange" between Lt. Gen. Wissler and the prosecuting attorney was not substantial evidence. *Id.* at 158. The decision letter does not explicitly address Mr. Krzywicki's claim that his wife had downloaded the photos from the internet and falsely told police they were of her. *Id.* However, the decision letter expressly states that the Board considered Mr. Krzywicki's response to the Advisory Opinion, including "the notarized affidavit from [his] spouse." *Id.* That statement, along with the implicit rejection of Mr. Krzywicki's claim in the Board's choice to give weight to the photographs, is enough for the Court to conclude that the Board considered and ultimately discredited that evidence.

As for Mr. Krzywicki's argument that the email exchange between Lt. Gen. Wissler and the prosecuting attorney was not substantial evidence, it is well-established that hearsay can constitute substantial evidence in an administrative proceeding. *Lacson v. DHS*, 726 F.3d 170, 178 (D.C. Cir. 2013). Furthermore, the key opinions expressed in the prosecutor's email exchange are corroborated by the record, including Mrs. Krzywicki's initial police report. Although Mr. Krzywicki contends that he was not given an opportunity to rebut the substance of the prosecutor's emails prior to the issuance of the ROM, it is uncontested that he did have the opportunity to do so before the hearing conducted by the BCNR. In the end, Mr. Krzywicki's argument is that the Board should have given less weight to those emails because the prosecuting attorney was not a reliable source of information about the trial, and because of the probative value of the evidence he offered in rebuttal. But it is not the Court's role to second-guess the weight given to the evidence by the BCNR, only to ensure that the evidence was considered. Accordingly, the Court concludes that the BCNR's 2018 decision was based on substantial evidence. That means that Mr. Krzywicki's APA claims fail.

### D.  Mr. Krzywicki was not denied due process.

Defendant also moves for summary judgment on Mr. Krzywicki's due process claims, making two arguments that are relevant here.[5] First, Defendant contends that the Court need not reach Mr. Krzywicki's due process claims because they are simply repackaged versions of his APA claims (which, as the Court explained *supra* Parts III.B & C, do not survive summary judgment). *See* ECF 19 at 46; ECF 24 at 14–15 (citing *In re Grand Jury Proc.*, 201 F. Supp. 2d 5, 10 (D.D.C. 1999)). In the alternative, Defendant contends that Mr. Krzywicki's due process rights were not violated because Mr. Krzywicki had adequate notice and opportunity to respond to the evidence against him before the BCNR considered his application. ECF 19 at 48. Mr. Krzywicki, in response to those arguments, contends that there remain genuine disputes as to his due process claims and that summary judgment is therefore premature. ECF 21 at 30–33. More specifically, Mr. Krzywicki contends that the decision to reconstitute the panel without giving him an opportunity to respond to the evidence that supported that decision was a violation of his due process rights. *Id.* at 28–30. He also makes several allegations of impartiality, bias, and improper ex parte communications on the part of the second panel. *Id.* at 31; *see also* ECF 1 ¶¶ 160–163. The Court disagrees and grants summary judgment for Defendant as to Mr. Krzywicki's due process claims.

---

[5] In addition to the arguments described *infra*, Defendant argues that Mr. Krzywicki lacks a legally cognizable liberty or property interest that would trigger his due process rights in the first place. ECF 19 at 48–51. In response, Mr. Krzywicki contends that he has a liberty interest in the harm that was done to his reputation by the ROM, and the effects of that harm on his career. ECF 21 at 24–28. He points to several promotions that he has been denied on the basis of the ROM, his impending discharge from the military, and the potential impact of the ROM on his future employment prospects. *Id.* at 24–25. The Court need not decide whether Mr. Krzywicki has alleged a constitutionally significant liberty or property interest, however, because even assuming that he has, neither his allegations nor the administrative record provide any support for the contention that he was denied due process by the BCNR.

First, the Court agrees with Defendant that Mr. Krzywicki's claim that the reconstitution of the BCNR panel violated his due process rights is simply a "repackage[d]" version of his APA claim and therefore fails for the same reasons as that claim. *See In re Grand Jury Proc.*, 201 F. Supp. 2d at 10. Moreover, while "[t]he Due Process Clause . . . require[s] that an agency setting a matter for hearing provide parties with adequate notice of the issues that would be considered, and ultimately resolved, at that hearing," *Pub. Serv. Comm'n of Ky. v. FERC*, 397 F.3d 1004, 1012 (D.C. Cir. 2005), Mr. Krzywicki cites to no authority to suggest that he had a constitutional right to be heard on a procedural matter like the one at issue here, particularly where the BCNR's decision was consistent with the agency's regulations.[6]

Next, the Court turns to Mr. Krzywicki's impartiality theory. Mr. Krzywicki asserts that he was denied a fair and impartial hearing because, "on information and belief," he suspects that the BCNR deputy director who served on the first panel and reconvened the second panel may have had ex parte communications with Lt. Col. Schrock, the author of the 2018 Advisory Opinion. *See* ECF 21 at 31. The Court concludes that those bare allegations—unsupported by anything Mr. Krzywicki can point to in the well-developed administrative record—are insufficient to survive summary judgment.

To be sure, the right to due process includes the right to "a fair process of decisionmaking." *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972). An agency decision may be reversed, for example, where "personal bias or prejudice is apparent in the conduct of the administrative proceedings" or

---

[6] As explained above, the administrative record reflects that the second BCNR panel was properly convened because of the first panel's incomplete understanding of the evidence—the correction of which did not introduce new evidence that was not already available to or addressed by Mr. Krzywicki. To the extent that Mr. Krzywicki contends BCNR improperly withheld information regarding the internal investigation into the BCNR case examiner, ECF 21 at 22–23, the Court agrees with Defendant that the details of the investigation had no impact on Mr. Krzywicki's ability to prosecute his case, nor did it impact his opportunity to be heard.

where the agency decision was "made by adjudicators with a pecuniary interest in the results." *Jonal Corp. v. District of Columbia*, 533 F.2d 1192, 1197 (D.C. Cir. 1976). However, "when a party alleges that a decision maker was unconstitutionally biased, that party 'must overcome a presumption of honesty and integrity in those serving as adjudicators.'" *Cayuga Nation v. Bernhardt*, 374 F. Supp. 3d 1, 21 (D.D.C. 2019) (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Here, Mr. Krzywicki cannot cite to anything in the administrative record that suggests any decisionmaker had a personal bias against him or a pecuniary interest in the outcome of his matter, or that the proceedings were otherwise fundamentally unfair. The mere allegation that one of the adjudicators on Mr. Krzywicki's panel, the deputy director, served on both the first and second panel after calling for the rehearing, without more, is insufficient to withstand summary judgment. *See Jonal Corp*, 533 F.2d at 1196–1197 (recognizing that any allegation that such a combination of functions, without more, creates an unconstitutional risk of bias carries a "difficult burden of persuasion" and denying such a claim).

Similarly, Mr. Krzywicki's speculation that there may have been ex parte communications between the deputy director and Lt. Col. Schrock, ECF 21 at 31, cannot support a due process claim, at least without some indication that those communications introduced new and material information to the proceedings or undermined the objectivity of the panel. *See Vanover v. Hantman,* 77 F. Supp. 2d 91, 105 (D.D.C. 1999), *aff'd*, 38 F. App'x 4 (D.C. Cir. 2002). Mr. Krzywicki's allegations fall short of that mark. He identifies nothing in the administrative record to support any belief that such a communication ever occurred. Moreover, nothing in the record suggests that the BCNR relied on information outside the record, like any purported communications with Lt. Col. Schrock, in judging the merits of Mr. Krzywicki's application. ECF 25-1 at 158–159. On the contrary, Lt. Col. Schrock's analysis of the evidence was well-

known to both Mr. Krzywicki and the panel via the Advisory Opinion that he prepared in advance of the hearing. Mr. Krzywicki does not allege that Lt. Col. Schrock was in possession of any information that was not already in the record, or even suggest what that information might have been.

The Court understands that Mr. Krzywicki wants to conduct fact discovery to substantiate his due process claims. Mr. Krzywicki does not clearly identify—either in his briefing or any accompanying affidavit—what discovery he intends to take and why he cannot present facts necessary to justify his opposition to Defendant's summary judgment motion based on the administrative record. *See, e.g.*, Fed R. Civ. P. 56(d). At this stage of the proceedings, with a well-developed administrative record available, the Court will not order discovery based solely on Mr. Krzywicki's speculation of potential bias and impartiality, untethered to any evidence in the record that suggests the need for additional discovery. Discovery is not typically available in APA cases or for constitutional claims that are premised on the same issues and thus overlap with a plaintiff's APA claims. *See, e.g.*, *Chiayu Chang v. USCIS*, 254 F. Supp. 3d 160, 162 (D.D.C. 2017) (recognizing that courts have "found that, where a plaintiff's constitutional claims fundamentally overlap with their other APA claims, discovery is neither needed nor appropriate."). Because Mr. Krzywicki has not justified his need for additional discovery, and because he identifies nothing in the record that supports his due process claims, the Court finds that his speculation that there was bias in his administrative proceedings is insufficient to survive summary judgment and that further proceedings are unnecessary. *See Cayuga Nation*, 374 F. Supp. 3d at 26–27 (citing *Burke v. Gould*, 286 F.3d 513, 520 (D.C. Cir. 2002)) (finding that plaintiff's "mere allegations" of Assistant Secretary's participation in the administrative decision at issue "are insufficient to defeat Defendants'… motion[] for summary judgment.").

21

**IV.    CONCLUSION**

The Court **DENIES** Plaintiff's motion for summary judgment, ECF 16, and **GRANTS** Defendant's cross motion for summary judgment, ECF 19.

A separate order accompanies this memorandum opinion.

**SO ORDERED.**

_____
JIA M. COBB
United States District Judge

Date: October 29, 2024